MELVIN D. STOCKMAN *vs.* BOSTON & MAINE RAILROAD.

Cumberland.     Opinion December 21, 1917.

*Negligence.     Duties of common carriers.     Rule as to common carriers using reasonable despatch.     Meaning of the words "reasonable despatch."*

In an action on the case to recover damages for injuries to plaintiff's horses while being transported from Watertown, Mass., to Portland, Maine, which is before this court on defendant's general motion for a new trial it is

*Held:*

1.   That the general rule is that defendant was bound to exercise reasonable care and diligence in transportation, to transport in a reasonable time without unnecessary delay and to prevent, so far as is reasonable and practicable, any loss or damage which may be occasioned by delays in transit.     What is reasonable in this class of cases, as in all others where reasonableness is the standard, must depend upon the circumstances of each particular case.

2.   That the Uniform Live Stock Contract in this case required the horses to be transported "with reasonable despatch," and this imposed upon the carrier the duty of using all reasonable effort to move the live stock quickly to its destination.

3.   That the finding of the jury that the defendant did not transport these horses with reasonable despatch is not manifestly wrong, it appearing that the horses

left Watertown, Mass., at 4.30 P. M. and arrived at Portland yard about noon of the next day and the place of unloading about three or four P. M. This was about twice the usual time required for the trip.

4. That while the plaintiff should be held responsible for any injury resulting from lack of ventilation which he had directed and prescribed, yet in so specifying the amount of ventilation he had the right to expect that the transportation would be completed within the usual time, and if the delay beyond that time was the proximate cause of the injuries the defendant should be held responsible therefor. The jury must have so found.

Action on the case to recover damages of defendant as common carrier for alleged negligence in transporting horses of the plaintiff from Watertown, Mass., to Portland, Maine. Defendant filed plea of general issue. Verdict for plaintiff in the sum of $707.71. Defendant filed motion for new trial. Motion overruled.

Case stated in opinion.

*Max L. Pinansky, and Dennis A. Meaher*, for plaintiff.
*Symonds, Snow, Cook & Hutchinson*, for defendant.

SITTING: CORNISH, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, MADIGAN, JJ.

CORNISH, C. J. The plaintiff at about 4.30 P. M. on March 29, 1916, delivered to the defendant ten horses at Union Market Station in Watertown, Massachusetts, to be transported to Portland, Maine. He had purchased these horses at Brighton and was shipping them to himself as consignee at Portland where he was the proprietor of a sales stable. They were delivered to him at Portland on the afternoon of March 30, 1916, in such a damaged condition, as the plaintiff claims, that three died within a few days from pneumonia and the other seven were sick for a considerable period so that they were depreciated in value and were sold at a loss.

For damages thus sustained the plaintiff brought this action and recovered a verdict of $707.71. The case is before the Law Court on a general motion to set this verdict aside as against the evidence.

The plaintiff set up two grounds of negligence, insufficient ventilation and delay in transportation. At the close of the evidence the presiding Justice took from the jury the question of insufficient ventilation because the proof was overwhelming that the plaintiff specified the amount of ventilation desired and the manner in which

the car door should be arranged in order to effect it, and his instructions and requests were strictly complied with. This left the question of delay in transportation and on that point the jury found negligence on the defendant's part.

The legal duty of the defendant as a common carrier is settled. It was bound "to exercise reasonable care and diligence in transportation, to transport in a reasonable time, without unnecessary delay, and to prevent so far as is reasonable and practicable any loss or damage which may be occasioned by delays in transit. What is reasonable diligence in this class of cases as in all others where reasonableness is the standard must depend upon the circumstances of the particular case." *Johnson* v. *Railroad Co.*, 111 Maine, 263; *Young* v. *Railroad Co.*, 113 Maine, 113. The Uniform Live Stock Contract under which this shipment was made contains this condition: "No carrier is bound to transport said live stock by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable despatch."

Were these horses transported with reasonable despatch? The jury have said that they were not and we do not think their verdict is so manifestly wrong that it should be set aside.

The following facts are not in controversy. The plaintiff brought these horses to the station at Watertown and they were loaded in a box car at 4.30 P. M. They were properly tied and one door was cleated open, leaving a space eight or ten inches wide for ventilation, the space at the bottom for a vertical distance of some three feet being covered so that the horses could not put their legs through the opening. The entire journey consisted of two parts, first from Watertown to Boston, and then from Boston to Portland. The car left Watertown at 6.10 P. M. and arrived at Boston, a distance of about six miles, at 7.05 P. M. It appears that there is no regular freight train from Union Market station to Boston. A "road switcher" and crew leave Boston every morning at 7.15 and work on the Watertown branch between West Cambridge and Waltham during the day. When they complete their work in the late afternoon they return and take with them any cars destined for Boston. Their time of departure is therefore indefinite, and their time of arrival in Boston is also indefinite depending upon the amount of work they are obliged to do between Watertown and Boston. The run can be made in twenty-five or thirty minutes. It might well be doubted whether this uncertain

and almost haphazard method of transportation of live stock over the short distance between Watertown and Boston is consistent with that reasonable despatch which the defendant has agreed to furnish.

But the greatest and it would seem an unnecessary delay occurred after the car reached Boston. Two trains left Boston for Portland in the evening, one at 7.05 P. M. and the other at 8.23 P. M., and a third in the early morning at 3.50 A. M. It is not too much to ask of the Company that if they take a carload of horses at 4.30 P. M. in Watertown they shall use every reasonable effort to connect with one or the other of the evening trains, so that the car can reach Portland the following morning. And the testimony of the plaintiff is that he had shipped many carloads of horses over this same route before and they had reached Portland about four or five o'clock A. M. and had been unloaded by him about seven or eight o'clock. They had evidently left Boston on one of those two evening trains, probably the 8.23.

There was ample time to have made that connection in this case. Over an hour and a quarter elapsed after the car reached Boston. The defendant attempts to furnish an excuse by explaining the location of the tracks, the interference with passenger traffic, and the delays that necessarily occur. The fact however remains that on all previous occasions there had been no difficulty and nothing has been shown to create any peculiar difficulty at this time.

The result was that the car remained in Boston from 7.05 P. M. until 3.50 A. M. before it started for Portland, nearly twelve hours after the horses had been loaded at a point only six miles away.

This is not that reasonable despatch which the contract demands. "Despatch" implies celerity, expedition, speed. It imposes upon the carrier the duty of using all reasonable effort to move the live stock quickly to its destination. Special trains cannot be expected, but a reasonably close connection with scheduled and existing trains can be insisted upon. In this case no more effort was apparently made to hasten these horses to their destination than if the car had been filled with flour or lumber.

The trip from Boston to Portland when once begun was completed within the usual time. No complaint can be made of that portion of the journey. The train left Boston at 3.50 A. M. and arrived at Portland at noon, or at 12.05 to be exact. Here however another delay followed. It was necessary to take this car from the yard where the train arrived, to what is called the bulkhead, where the horses

were to be unloaded. The defendant claims the car was in place for unloading at two-thirty or three o'clock, the plaintiff says at four or four-thirty o'clock. The evidence on this point was contradictory, and we cannot say that the jury were not warranted in accepting the later hour. This completed a period of nearly if not quite twenty-four hours that the horses were on the road, which was about twice the usual limit. Considering all the facts we do not think the jury erred in finding want of reasonable diligence on the part of the defendant and its servants.

We think too that this long delay in transportation was the proximate cause of the condition of the horses on their arrival in Portland. The preponderance of the evidence is to the effect that when unloaded the horses were dripping with perspiration, were weak, and sick. The weather was unseasonably warm, especially during the day. They had been breathing the contaminated air, and they were in a sick and debilitated condition. Bronchitis and pneumonia followed in several instances. The defendant urges that this condition was due wholly to lack of sufficient ventilation, and for that the plaintiff himself was responsible. The plaintiff replies that from his long experience he is confident the ventilation was ample for the trip had it been made in the night and with ordinary despatch, and we think there is force in the reply. The plaintiff in directing and specifying the amount of ventilation had a right to expect that the transportation would be completed within the usual time. Had this been done doubtless all would have been well. The extra hours of delay, during the warm day and under the existing conditions, evidently were the proximate cause of the damages sustained.

*Motion overruled.*

Mr. JUSTICE HALEY does not concur.